**NOT FOR PUBLICATION**                          **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BERNARD FLASHMAN, | |
| Plaintiff, | Civil Case No. 14-1287 (FSH)(JBC) |
| v. | **OPINION & ORDER** |
| JET AVIATION FLIGHT SERVICES, INC., | October 1, 2014 |
| Defendant. | |

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Defendant Jet Aviation Flight Services, Inc.'s motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 7). The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

### I.  BACKGROUND

      Plaintiff Bernard Flashman's January 15, 2014, Complaint contains a single count: a purported violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1.  Plaintiff claims that Defendant Jet Aviation—a private flight service— unlawfully terminated Plaintiff's employment as Director of Operations, allegedly in retaliation for his objections to Defendant's air-safety compliance. Jet Aviation removed the case to this Court from the Superior Court of New Jersey, Law Division, Bergen County.  Defendant asserts

that the Complaint implicates air carrier "services" under the Airline Deregulation Act and is, therefore, preempted by federal law.

Plaintiff Flashman worked as Director of Operations for Defendant from September 2009 to June 2012. The Director of Operations is responsible for monitoring regulatory compliance and reporting violations to the Federal Aviation Administration ("FAA"), the federal agency responsible for aviation safety. Plaintiff claims that he was terminated from his position based on his objection to Jet Aviation's alleged failure to follow a required chain-of-command. Specifically, Plaintiff contends that the FAA mandates that the "Chief Pilot" for an air carrier report to the "Director of Operations."  (Compl. ¶ 16). Jet Aviation allegedly disregarded the authority of the Director of Operations—Plaintiff—over the Chief Pilot, (Compl. ¶¶ 33-35), and at times required Plaintiff to report to the Chief Pilot, purportedly in violation of the FAA handbook. (Compl. ¶¶ 16, 17, 36).  Plaintiff filed a "Safety Report addressing the conflict of authority," (Compl. ¶ 36), and informed the FAA of the alleged organizational structure violations, (Compl. ¶¶ 27, 28).[1] In May 2011, the FAA purportedly informed Plaintiff that the "organizational structure had to be addressed as a matter of regulatory compliance," a concern that Plaintiff then communicated to Jet Aviation's management. (Compl. ¶ 28).

In one incident, Plaintiff alleges that Jet Aviation instructed the Chief Pilot to release a purportedly "unsafe" flight, which then "experienced a safety related event" requiring "a 'self disclosure' to the FAA." (Compl. ¶ 30). Plaintiff contends that Jet Aviation circumvented Plaintiff's authority and "release[d] the illegal and unsafe flight, knowing that Flashman would

---

[1] The Court notes, without deciding the issue, that Plaintiff's attempt to make this dispute over Plaintiff's personal managerial authority fit within CEPA based on a clause in an FAA handbook is a thin read of the statute. But the Court lacks subject matter jurisdiction to decide whether this Complaint involves merely internal business practices rather than a clear mandate of public policy.

not have authorized it." (Compl. ¶ 31). During Plaintiff's investigation of this unidentified "safety related event" Plaintiff contends that Jet Aviation concealed information important to Plaintiff's investigation. (Compl. ¶¶ 32, 34).

On June 21, 2012, Jet Aviation terminated Plaintiff's employment. (Compl. ¶ 39). Plaintiff alleges that Jet Aviation "unlawfully terminat[ed] Plaintiff's employment in retaliation for his conduct in attempting to discharge his federally required job functions as Director of Operations" and for "communications with the FAA." (Compl. ¶¶ 40, 42, 50).

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations

omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

### III.  DISCUSSION

The only dispute is whether the Airline Deregulation Act ("ADA") expressly preempts Plaintiff's state law whistleblower claim, particularly whether Plaintiff's objection to Jet Aviation's back-office chain-of-command has "too peripheral" a connection to an air carrier's "point-to-point transportation" of passengers.[2]

**a. Express Preemption Of State Law Claims Under the ADA**

"Congress enacted the ADA in 1978 to prevent the states from re-regulating airline operations so that competitive market forces could function." *Gary v. The Air Grp., Inc.*, 397 F.3d 183, 186 (3d Cir. 2005) (citations omitted). The Act includes a preemption clause: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of

---

[2] Defendant's only preemption argument is that "the ADA's *express* provision preempt[s] [Plaintiff's] state law claim." (Def.'s Reply Mem. 2). In a footnote, Defendant references implied preemption: "Jet Aviation reserves all rights . . . to argue implied preemption . . . on appeal." (Def.'s Mem. of Law in Supp. of its Mot. to Dismiss 3 n.2). But Defendant has failed to make any argument or provide any analysis that the ADA or the Whistleblower Protection Program impliedly preempts Plaintiff's claim, and has, therefore, waived any such argument. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir.1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before this court.") (internal quotation marks omitted); *Curtis v. Treloar*, Civ. No. 96-1239, 1998 WL 1110448, at *9 (D.N.J. Aug. 27, 1998) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)), *aff'd*, 189 F.3d 463 (3d Cir. 1999).

law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. § 41713(b)(1). Only air carrier "services" are at issue in this case. "Services" include, at the very least, the "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 193 (3d Cir. 1998) (approving of the Ninth Circuit's definition of "services" in *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc)). The only "service" Defendant contends is implicated by Plaintiff's Complaint is "the point-to-point transportation of Jet Aviation." (Def.'s Mem. 5). There is no dispute that "point-to-point transportation" is a "service" within the meaning of the ADA.

In the context of state law whistleblower claims—where an employee alleges retaliation for reporting an employer's illegal act—a claim is expressly preempted only if it "relates to" an air carrier's "prices, routes, or services." *See Gary*, 397 F.3d at 189; *Ventress v. Japan Airlines*, 603 F.3d 676, 683 (9th Cir. 2010); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1262-63 (11th Cir. 2003). "[T]he key phrase 'related to' expresses a broad pre-emptive purpose. . . a claim relates to rates, routes, or services, within the meaning of the ADA, if the claim has a connection with, or reference to, airline rates, routes, or services." *Nw., Inc. v. Ginsberg*, 134 S. Ct. 1422, 1428 (2014) (internal quotation marks omitted). "The requisite connection exists either where 'the law expressly references the air carrier's prices, routes or services, or has a forbidden significant effect upon the same.'" *Gary*, 397 F.3d at 187 (quoting *United Parcel Serv., Inc. v. Flores-Galarza*, 318 F.3d 323, 335 (1st Cir. 2003)). "[S]uch pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect." *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 370 (2008) (internal quotation marks omitted). But state law is not preempted if the claim has a connection to flight services that is "too tenuous, remote, or

peripheral a manner to have pre-emptive effect." *Morales Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) (internal citations omitted); *see*, *e.g.*, *Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 597 (5th Cir. 1993) (finding claim based on an airline's alleged retaliation against a mechanic for filing a workers' compensation action was not preempted because "[a]ny effect that such a claim may have on American's services is far too remote to trigger pre-emption."). Here, the sole issue is whether Plaintiff's claim of retaliation for objecting to Defendant's organizational structure and reporting it to the FAA has a "forbidden significant effect" upon an air-carrier's "point-to-point transportation," or whether the connection to this service is "too tenuous, remote, or peripheral."

In *Gary*, the Third Circuit considered whether a plaintiff's CEPA claim for wrongful termination—purportedly based on his objection to his co-worker's lack of FAA-required flight experience—was too tenuously related to air carrier services within the meaning of the ADA. There, the connection between plaintiff's objection to his co-worker's qualifications and point-to-point transportation was "simply too remote and too attenuated," *Gary*, 397 F.3d at 189, and thus "cannot be deemed to be related to the 'service of an air carrier,'"*id.* at 189 n.6. Instead, "Gary's actions [were] more properly viewed as comparable to a garden variety employment claim . . . ." *Id.* The Court found that the plaintiff's claims "did not interrupt any scheduled flights, nor did they have the potential to ground any scheduled flights," and therefore, "the relation of Gary's whistleblower report to 'service' is even more attenuated . . . ." 397 F.3d at 189.

**b. Whether Plaintiff's Objection Or Report Had A "Significant Effect" On "Services"**

Defendant argues that Plaintiff's objection to Jet Aviation's organizational structure would have required suspending its service. The Complaint claims the FAA handbook mandates that the Director of Operations have authority over the Chief Pilot, but at Jet Aviation management allegedly interfered such that Plaintiff did not have authority over the Chief Pilot. (Compl. ¶¶ 16, 17, 36). After Plaintiff objected to this practice and reported it to the FAA, Defendant allegedly terminated Plaintiff's employment. Defendant argues that, "[h]ad Jet Aviation acceded to Plaintiff's claims, Defendant would have been forced to cease operations until its reporting and organizational structure came into compliance." (Def.'s Mem. 4-5). But Defendant does not explain how enforcing this particular chain-of-command would have grounded any flight, let alone "forced [Jet Aviation] to cease operations." On this record, the Court cannot conclude that halting the alleged interference or changing the back-office reporting lines would have resulted in flight delays or cancelations. *See Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 674 (E.D.N.Y. 2012) ("[Plaintiff's objection] to the suitability of certain aircraft replacement parts[] would not necessarily result in the disruption of flight services. . . [T]he Court [cannot] conclude that there were any delays resulting from the Plaintiff's complaints to supervisors that affected air services, or even that the Plaintiff refused to fix certain plane parts which could, in theory, affect air services.").

Moreover, there has been no argument that Plaintiff's actions in fact caused delays; that Plaintiff threatened to shut down operations; or that Plaintiff's objections grounded flights.[3]

---

[3] Indeed, Plaintiff continued to perform his responsibilities. (Compl.¶¶ 32, 34, 35). Defendant notes that Plaintiff "objected to and refused to participate in activities or practices which he reasonably believed to be incompatible with a clear statement of public policy concerning the public health, safety or welfare." (Compl. ¶ 49). But these "activities or practices" are never

Instead, Plaintiff objected, *post hoc*, to Defendant's chain-of-command: after Defendant purportedly circumvented Plaintiff, he objected, (Compl. ¶ 33); after a subordinate allegedly assigned Plaintiff projects, Plaintiff claims he filed a "Safety Report," (Compl. ¶ 36); and after a regional manager purportedly contacted the FAA without Plaintiff's approval, he objected, (Compl. ¶ 38). Plaintiff reported these alleged violations to the FAA, for which he contends he was terminated. Where an employee reports an alleged violation in a manner that does not interrupt flight services, Courts have found the connection to services to be too tenuous. *Gervasio v. Continental Airlines, Inc.*, Civ. No. 07-5530, 2008 WL 2938047, at *3 (D.N.J. July 29, 2008) (finding no preemption of CEPA claim where member of the ground crew was terminated after reporting a breach of the passenger security checkpoint); *see also Espinosa v. Continental Airlines*, 80 F. Supp. 2d 297, 301 (D.N.J. 2000) (finding that, where aircraft technician was terminated after objecting to defendant's use of an aircraft with alleged mechanical problems and reporting the use to the FAA, "it is not reasonable to believe that a retaliatory discharge claim is in any way 'related to' air carrier services"); *see also Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003) (finding airline mechanic's wrongful discharge claim, allegedly based on his *post hoc* reporting of the airline's improper testing of an engine to the FAA, was not preempted because it did not "relate in any meaningful way to the transportation of passengers from one location to another.").

Unlike the case here, in several cases that Defendant relies upon, the employee's objection either actually grounded flights or had real potential to impact a flight, thus having a forbidden "significant effect" upon services. *See Botz v. Omni Air Int'l*, 286 F.3d 488, 494-95

---

identified and, in any event, his purported refusal to participate in an activity is not linked to a disruption of air carrier "services."

8

(8th Cir. 2002) (finding that there was a forbidden "significant effect" upon point-to-point transportation where: the whistle-blower law included "broad authorization to flight attendants to refuse assignments"; the plaintiff objected and "refused a flight assignment"; and "a significant likelihood exist[ed] that the carrier will have to cancel the flight . . . when the flight attendant refuses the assignment within a few hours of the flight's scheduled departure."); *Cunningham v. Jet Aviation Flight Servs., Inc.*, Civ. No. 12-6594, 2013 WL 1758617, at *3-4 (D.N.J. Apr. 24, 2013) (where plaintiff pilot operated air carrier for a single client, her objection to the number of days off and length of rest periods "directly impact[ed] her availability to provide the flight services that the client demanded. . . . [T]he inability to contact a pilot for a duty assignment is tantamount to that pilot's refusal to fly, . . ."); *Simonds v. Pan Am. Airlines, Inc*., Civ. No. 03-11, 2003 WL 22251155, at *2, *6 (D.N.H. Sept. 30, 2003) (finding that, where commercial pilot told his superior that he "would not fly the aircraft" on a particular flight because of purported FAA violations, plaintiff's conduct "created a real threat to Pan Am's ability to provide service to its customers (by threatening to ground the plane)."); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 375 (Tex. App. 2007). ("Unlike a post hoc report of a violation as in *Branche*, or a refusal to perform an illegal act unrelated to actual air flight, [plaintiff pilot's] claim," based on his termination for his refusal to fly on aircraft with alleged mechanical problems, "directly impinges on the provision of air carrier services."). But as this Court held in *Cunningham*, "where an air carrier employee's complaints do not affect the employee's availability to work particular days and no particular flight is disrupted, the connection to the air carrier's service is 'simply too remote and too attenuated to fall within the scope of the ADA.'" Civ. No. 12-6594, 2013 WL 1758617, at *4 (quoting *Gary*, 397 F.3d at 189); *see also Branche*, 342 F.3d at 1263 ("Had Branche claimed that Airtran fired him in retaliation for refusing to allow a plane to take

9

off due to safety concerns, this would present a situation closer" to a significant effect upon point-to-point transportation).

Defendant next argues that Plaintiff's claim has a forbidden effect on point-to-point transportation because he had the ability to ground flights and identified a particular flight he would have grounded. Defendant points to Plaintiff's allegation that "JAFS upper management directed [the Chief Pilot] to release the illegal and unsafe flight, knowing that Flashman would not have authorized it." (Compl. ¶ 31). Relying on this allegation, Defendant concludes that, "[h]ad Jet Aviation responded to Plaintiff's concerns and given him the authority he believes was federally mandated, he would not have allowed that scheduled flight to operate, thereby affecting service." (Def.'s Mem. 5). But this purportedly "unsafe" flight does not form the basis of Plaintiff's cause of action. Plaintiff does not plead any details of the flight, such as the date of the occurrence or how the flight was "unsafe." He does not allege he was unlawfully terminated based on this flight; nor does he claim that he was fired for reporting this flight to the FAA; nor did he interrupt the service of this flight—Plaintiff was purportedly unaware of its occurrence until the "Chief Pilot [brought] the matter to Plaintiff's attention." (Compl. ¶ 32). *See Ventress*, 603 F.3d at 683 ("Although [plaintiff] alleges he told the ill pilot that he would pull himself off future flights if the pilot did not stop flying, he does not allege that he was fired in retaliation for that threat . . . ."). As the Complaint makes clear, Plaintiff alleges a CEPA violation based on Defendant's purported retaliation for reporting Jet Aviation's organizational structure to the FAA in July 2011. (*See* Compl. ¶¶ 1, 41-42). Jet Aviation's alleged release of the "unsafe" flight is not the basis for Plaintiff's claim, rather it is purported evidence of Plaintiff's objection: that Jet Aviation's management circumvented the authority of the Director of Operations. Defendant's counterfactual scenario—that, if Defendant had conformed to the FAA requirements, Plaintiff

10

had been given the authority he requested, and Plaintiff had known of the purportedly "unsafe" flight, then "he would have grounded that scheduled flight," (Def.'s Reply Br. 6)—is precisely the type of connection that is too tenuously related to "services" to require preemption. *See Gervasio*, Civ. No. 07-5530, 2008 WL 2938047, at *3; *Espinosa*, 80 F. Supp. 2d at 301.  As in *Gary*, Plaintiff's "actions are more properly viewed as comparable to a garden variety employment claim." 397 F.3d at 189.

Accordingly, Plaintiff's alleged termination based on his report to the FAA regarding Jet Aviation's back-office organizational structure does not have a "forbidden significant effect" on services because its connection to the transportation of passengers is simply too tenuous. *See Branche*, 342 F.3d at 1259; *Ventress v. Japan Airlines*, 603 F.3d 676, 683 (9th Cir. 2010) ("[R]eported safety violations six months after they occurred and after completion of the scheduled flights . . . did not interrupt 'service.'"); *James v. Evergreen Int'l Airlines, Inc.*, Civ. No. 07-1640, 2008 WL 2564804, at *4 (D. Or. June 23, 2008) (finding connection to services was tenuous when plaintiff's "wrongful discharge claim . . . [was] based on retaliation that occurred after [plaintiff's] complaints about being tired and about potential FAA violations").

Because Plaintiff's state law CEPA claim is not preempted, there is no independent ground for jurisdiction, and this matter is remanded to New Jersey Superior Court, Law Division, Bergen County.

### IV.   CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 1st day of October, 2014,

**ORDERED** that Jet Aviation's motion to dismiss (Dkt. Nos. 7) is **DENIED**; and it is further

**ORDERED** that this matter is remanded New Jersey Superior Court, Law Division, Bergen County; and it is further

**ORDERED** that the Clerk of the Court mark this case **CLOSED**.

**IT IS SO ORDERED.**

**  /s/ Hon. Faith S. Hochberg**
**Hon. Faith S. Hochberg, U.S.D.J.**